# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, as subrogee of Roy Morgan | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| | ) | Civil Action No. |
| v. | ) ) | |
| LG ELECTRONICS USA, INC. | ) ) | |
| | ) | JURY DEMAND |
| *Defendant.* | ) | |

## PLAINTIFF'S COMPLAINT

NOW COMES the Plaintiff, ALLSTATE VEHICLE AND PROPERTY INSRUANCE COMPANY ("ALLSTATE") as subrogee of Roy Morgan, by and through its attorneys, SCOTT DUKES & GIESLER, and for its cause of action against Defendant, LG ELECTRONICS USA, INC. states and alleges as follows:

## PARTIES AND GENERAL ALLEGATIONS

1. At all times relevant, Roy Morgan (hereinafter, "Morgan"), was and is a resident of the State of Alabama, owning and residing at his home located at 2819 Glen Lawrence Road, Cowarts, Alabama (hereinafter "subject property").

2. At all times relevant and based on information and belief, Defendant LG Electronics USA, INC. (hereinafter, "LG"), is organized and existing under the

laws of New Jersey, with its principal place of business at 1000 Sylvan Ave, Englewood Cliffs, New Jersey 07632.

3.      At all relevant times and based on information and belief, Defendant LG is engaged in the business of designing, assembling, manufacturing, testing, marketing, selling, and distributing appliances, including refrigerators, in and throughout the United States, including the State of Alabama.

4.      At all times relevant, Allstate insured Morgan, which *inter-alia*, providing insurance coverage for real and personal property damage and other related expenses stemming from risks to property, such as fire.

5.      Under the terms of the insurance policy referenced in paragraph four, and upon demand by Morgan, Allstate paid the damage claim in excess of $500,000 to or on behalf of Morgan for damages sustained as a result of the fire loss.  In consideration of this payment, and by operation of law, Allstate became an actual bona fide subrogee of Morgan for a claim in excess of $500.000 and became subrogated to the rights and claims of Morgan against any person or entity determined to have proximately caused the damages to the Morgan real and personal property, in addition to additional living expenses.

6.      At all relevant times, ALLSTATE is an Illinois corporation, with its principal place of business in Northbrook, Illinois.

2

7.    The incident which gives rise to this Complaint occurred at the subject property.

## JURISDICTION AND VENUE

8.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(a)(1) as Allstate is a citizen of Illinois and Defendant LG is citizen of New Jersey and the amount in controversy exceeds $75,000, exclusive of interest, cost, and fees.

9.    Personal jurisdiction of this Court is proper because Defendant LG has sufficient minimum contacts in the State of Alabama.

10.    Venue is proper in the United States District Court of the Middle District of Alabama, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the district, and because a substantial part of property that is the subject of the action is situated within the district.

## FACTUAL ALLEGATIONS

11.    Prior to 2017, Defendant LG designed, manufactured, assembled, tested, inspected, distributed and placed into the stream of commerce, including but not limited to the LG side by side refrigerator freezer with icemaker dispenser (hereinafter "refrigerator"), said products being intended for use by consumers for the ordinary purpose associated with preserving consumable food products.

12. Upon information and belief, in 2017, Morgan purchased the refrigerator from Lowes.

13. Upon information and belief, the subject refrigerator was designed, manufactured, assembled, tested, inspected, marketed, sold, distributed and placed into the stream of commerce by Defendant LG.

14. At all relevant times, Morgan used the subject refrigerator for its reasonably foreseeable and intended purpose to maintain, cool, and preserve food products at the subject property.

15. At all relevant times, Defendant LG knew and intended that the subject refrigerator would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said refrigerators would be utilized.

16. Defendant LG designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce the aforesaid subject refrigerator, including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

17. Upon information and belief, the subject refrigerator was not altered, modified, or repaired in any way, subsequent to its purchase and installation.

18. On or about August 25, 2024, a fire occurred at the subject property, causing significant smoke, fire and additional resultant damages to the real and

personal property at the subject property and additional fire related damages (hereinafter, the "subject fire").

19.    The investigation into the origin and cause of the fire determined the subject fire originated within the kitchen.

20.    Specifically, the fire originated at the subject refrigerator.

21.    Subsequent investigation revealed evidence of an electrical malfunction within the refrigerator.

22.    As a direct result of the subject fire, extensive damages occurred to the subject property and the property contained therein, as well as additional related damages, in excess of $500,000.

### COUNT I: STRICT PRODUCT LIABILITY

23.    Plaintiff repeats and re-alleges paragraphs 1 through 22 of this Complaint, as though fully set forth in this Count I.

24.    At all relevant times, Defendant LG designed, assembled, manufactured, tested, marketed, sold, and distributed refrigerators and their component parts and specifically designed, tested, inspected, assembled, manufactured, distributed, and placed into the stream of commerce the subject refrigerator.

25.    Upon information and belief, the subject refrigerator was distributed for sale to the general public and consumers, including Morgan, in the same condition

in which it was designed, assembled, manufactured, tested, marketed, sold, and/or distributed.

26. Upon information and belief, and at all relevant times, the subject refrigerator was not modified, changed, altered or abused by Morgan at the subject property.

27. At the time the subject refrigerator left Defendant LG's possession and control and was placed into the stream of commerce, it was defective, unsafe, and unreasonably dangerous.

28. At all relevant times and upon information and belief, Morgan used the subject refrigerator for its customary, normal, and reasonably foreseeable use.

29. Upon information and belief, the subject refrigerator reached Morgan without substantial change in condition.

30. At all relevant times, Morgan used the subject refrigerator for its reasonably foreseeable and intended purpose.

31. When the subject refrigerator left Defendant LG's control and was placed into the stream of commerce, it was unreasonably dangerous and defective, in light of its foreseeable and intended use, in one or more of the following ways:

      a. The subject refrigerator contained one or more manufacturing defects inside its electrical system, including but not limited to the circuit board;

b.    The subject refrigerator contained one or more design defects related to the design of the electrical system, including but not limited to the circuit board;

c.    The subject refrigerator contained electrical components which failed to contain all necessary connections, including but not limited to the circuit board;

d.    The subject refrigerator was designed and manufactured in such a way so as to allow its electrical system to operate under unsafe conditions;

e.    The subject refrigerator was designed and manufactured without a thermal cut-off or automatic turn off, allowing it to remain energized despite an arcing event;

f.    The subject refrigerator failed to contain warnings to the user and/or consumer of the subject refrigerator regarding the subject refrigerators ability to cause a fire due to electrical failures; and/or

g.    The subject refrigerator was otherwise defective.

32.    The subject fire and resultant damages were caused by and/or resulted from the acts and/or omissions of Defendant LG, by and through its agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Defendant LG is liable based upon the theory of strict liability for the following reasons:

a.    Failing to design, manufacture, inspect, assemble, distribute, and/or market a properly functioning and defect-free refrigerator, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.    Failing to property design, manufacture, inspect, assemble, distribute, and/or market the subject refrigerator, including but

7

not limited to, its electrical system, circuit board, connections, and other component parts free from defect;

c. Failing to properly determine that the subject refrigerator, including but not limited to its electrical system, circuit board, connections, and other component parts were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

d. Designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject refrigerator and its component parts, which was unreasonably dangerous and caused the subject refrigerator to catastrophically fail and/or malfunction;

e. Failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute, and/or test the subject refrigerator and its component parts, prior to introducing it into the stream of commerce;

f. Failing to provide adequate and sufficient warnings and instructions with respect to the subject refrigerator, which rendered it defective and unreasonably dangerous;

g. Designing, manufacturing, inspecting, assembling, distributing, and/or marketing the subject refrigerator in a defective condition because the subject refrigerator did not contain proper safety features and/or devices to prevent an overheating condition rendering it hazardous and dangerous for its contemplated and intended use;

h. Designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject refrigerator in a defective condition rendering it hazardous for its contemplated and intended use;

i. Designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject refrigerator in a defective condition because the electrical circuity would overheat;

8

    j.     Designing and/or manufacturing the subject refrigerator in an unreasonably dangerous manner because it failed to include the necessary safety devices;

    k.     Designing and/or manufacturing the subject refrigerator in a defective condition because the subject refrigerator's safety features and/or devices failed to properly function and/or operate during reasonable and intended usage;

    l.     Improperly designing, manufacturing, assembling, testing, or installing component parts and safety devices in the subject refrigerator.

33. The aforementioned defects or defective conditions existed as the time the subject refrigerator left the possession and/or control of Defendant LG.

34. The defective, unreasonably dangerous and unsafe condition of the subject refrigerator as aforesaid was a direct and proximate cause of the damages sustained.

35. On August 25, 2024, as a direct and proximate result of the aforementioned defective conditions, the subject refrigerator suddenly and catastrophically failed, causing the subject fire to ignite within the subject property.

36. On August 25, 2024, as a direct and proximate result of the aforementioned defective conditions of the subject refrigerator, the subject fire occurred, and the subject property and other personal property was destroyed or damaged and caused other consequential and incidental damages including clean-up costs, repair, and other associated additional living expenses.

9

37.    The total damage incurred was in excess of $500,000 as a result of the subject fire.

WHEREFORE, Plaintiff respectfully requests judgment be entered in its favor and against Defendant LG, LLC in an amount in excess of $500,000 plus interest, costs, fees, and other further relief this Court deems equitable and just.

## COUNT II: NEGLIGENCE

38.    Plaintiff repeats and re-alleges paragraphs 1 through 37 of this Complaint, as though fully set forth in this Count II.

39.    At all times relevant, Defendant LG, by and through its employees, agents, and/or representatives, owed a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection, and/or distribution of the subject refrigerator for the safety consumers, including Morgan and its real and personal property.

40.    Notwithstanding said duty, Defendant LG, by and through its agents and employees, breached its duty through one or more of the following acts or omissions:

      a.     Failing to design, manufacture, inspect, assemble, distribute, and/or market a properly functioning and defect-free subject refrigerator, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

      b.     Failing to property design, manufacture, inspect, assemble, distribute, and/or market the subject refrigerator, including but

10

not limited to, its electrical system, circuit board, connections and other component parts free from defect;

c. Failing to properly determine that the subject refrigerator, including but not limited to its electrical system, circuit board, connections, and other component parts were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

d. Designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject refrigerator and its component parts, which was unreasonably dangerous and caused the subject refrigerator to catastrophically fail and/or malfunction;

e. Failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute, and/or test the subject refrigerator and its component parts, prior to introducing it into the stream of commerce;

f. Failing to provide adequate and sufficient warnings and instructions with respect to the subject refrigerator, which rendered it defective and unreasonably dangerous;

g. Designing, manufacturing, inspecting, assembling, distributing, and/or marketing the subject refrigerator in a defective condition because the subject refrigerator did not contain proper safety features and/or devices to prevent an overheating condition, rendering it hazardous and dangerous for its contemplated and intended use;

h. Designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject refrigerator in a defective condition rendering it hazardous for its contemplated and intended use;

i. Designing and/or manufacturing the subject refrigerator in an unreasonably dangerous manner because the lack of safety features caused an electrical malfunction;

11

j.  Designing and/or manufacturing the subject refrigerator in a defective condition because the subject refrigerator's safety features and/or devices failed to properly function and/or operate during reasonable and intended usage; and/or

k.  Improperly designing, manufacturing, assembling, testing, or installing component parts and safety devices in the subject refrigerator.

41.  On August 25, 2024, as a direct and proximate result of the Aforementioned negligent acts and omissions of Defendant LG, the subject refrigerator suddenly and catastrophically failed, causing the subject fire to ignite within the subject property.

42.  On August 25, 2024, as a direct and proximate result of the aforementioned negligent acts and omissions of Defendant LG, the subject fire occurred and certain real and other personal property belonging to Morgan was destroyed or damaged.

43.  The total incurred damages were in excess of $500,000 as a result of the subject fire.

WHEREFORE, Plaintiff respectfully requests judgment be entered in its favor and against Defendant LG in an amount in excess of $500,000 plus interest, costs, fees, and other further relief this Court deems equitable and just.

## JURY DEMAND

44.  Plaintiff demands a trial by struck jury.

12

Respectfully submitted,


*/s/ Christian C. Feldman*
Christian C. Feldman (ASB-0000-F38H)


SCOTT DUKES & GEISLER, P.C.
211 22nd Street North
Birmingham, AL 35203
Telephone: (205) 251-2300
Fax: (205) 251-6773
Email: cfeldman@scottdukeslaw.com

Brad M. Gordon (pro hac vice to be filed)
GROTEFELD HOFFMANN & GORDON LLP
311 S. Wacker Dr., Ste. 1500
Chicago, IL 60606
(312) 551-0200 - Phone
(312) 601-2402 - Fax
Bgordon@ghlaw-llp.com


**Defendants to be served via certified mail by Plaintiff**:

LG ELECTRONICS USA, INC.
C/O CORPORATION SERVICE COMPANY INC
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104